Birchard, J.
In the settlement that took place between the •defendant, Williams, and his successor in office, the appropriate papers were executed between the two, to evidence the discharge of the former, and the liability of the latter, for the then existing -school fund of the township.
This settlement was required by law. “ At the expiration of the treasurer’s term of office he shall deliver over to his successor in office all the books, etc., belonging to his office, with all moneys and property of every description in his hands belonging to said township, or any district therein, and take the receipt of his successor therefor, and deposit the same with the township ■clerk, within ten days thereafter.” Swan’s Stat. 830. The first •error assigned, makes this question: Was Moots, the successor, a •competent witness to prove that the receipt executed by him, pursuant to this provision of *the statute, was incorrect; that it embraced a sum too large by $97 ?
It may well be admitted that these settlements can be made in the absence of third parties, and that no one but the parties will be able to testify concerning it, for the statute contemplates that better evidence of the particulars of the settlement shall be furnished than the uncertain memory of any witness, and that this «evidence shall be deposited with the superintendent of common *438 schools of the township. The written receipt is the evidence. It is to be deposited with the clerk to show, in all future settlements-with the county auditor, or his successors, the sum with which the-treasurer should be charged.
Much inconvenience, and many abuses, may be expected to occur, if the officers of townships, regardless of the evidence prescribed by law for the safety of the school fund, were generally in the practice of interfering in disputes between two treasurers, and commencing suits in the name of the state, in order to enable one-to avoid the liabilities incurred by his official voucher, and by means of his own testimony, to cast the burden upon the other, whom that voucher was designed to protect. Under such a course of practice it is not difficult to see that the means of securing the school fund, and a correct, safe system of accountability on thia part of the officers intrusted with it, would be inefficient, and uncertain.
On the other hand, if they will be governed by the legal evidence pi'ovided by law, instead of attempting to amend it by the-oaths of the parties, whose duty is to furnish that evidence, their task is plain, as it is safe for the public. This view of the issue makes it substantially, and in fact, a controversy between Williams and the witness Moots. The one was interested in maintaining the payment of the ninety-seven dollars in cash; the other in controverting the payment. It is something strange, if Moots’ interest was not equal to Williams’. He had given a receipt, prima facie, discharging Williams, and was liable to an action for the money if he had received it, and if ho had not received it, liable for a careless, or faithless performance of duty in discharging the-same, without receiving it. A *man of sound common sense, viewing the question upon its merits, untrammeled by any supposed technical rule, would not hesitate to declare it unfair and inequitable to permit Moots to testify to the truth ol his own statement, and to deny to Williams the advantage of his oath to the truth of his counter statement. When a rule of law works an absurd result in a particular case, it is, in general, worth one’s while to cautiously examine, and see that it is not misapplied. It seems-to us that no rule can be correctly applied to this case, which will-result in the conclusion that Moots was disinterested, and a competent witness.
Counsel have argued as if the true test of interest were, whether *439 or not the verdict might be used in a suit in any way for or against the witness. If it could be so used, it is obvious he would bo incompetent, yet it by no means follows that if it could not be so used, he would be.disinterested. “ The law,” says Gilbert, “ looks upon a witness as interested, when there is a certain benefit, or disadvantage, attending the consequence of the cause one way.” Thus, a person who has deposited with the sheriff a sum of money in lieu of bail, which, by rule of court, is to abide the event of suit, is not competent for defendant. 1 Phil. Ev. 63 ; Cowen and Hill’s Notes, 114, and cases there cited.
The auditor of Logan is superintendent of the common school® for that county. Swan’s Stat. 835, sec. 29. The clerk of Monroe is superintendent for the township. Swan’s Stat. 832, sec. 21. Both are presumed to have knowledge of the state of this school fund. In the annual settlements with these officers, by the township treasurer, they should rely upon the evidence provided by law, and the legal presumption is, that they would do their duty. If that evidence charge Moots, as treasurer, with this sum of ninety-seven dollars, they ought to make him account for it, and leave him to resort to his personal action against Williams, provided he gave the discharge without consideration. He is the one who is .interested in correcting the error, or mistake, and the way to correct it is by a suit in his own name, in which he can not bo a witness for himself, but by bill *may compel Williams to answer under oath, and use that answer himself in support of his claim. The bringing of the suit by the township is a device that makes no change in the.nature of the controversy. Is it true that a recovery would be no direct advantage to Moots ? If he bo sued after the money shall be collected of Williams, will he not be able to trace that money into the possession of the township ? Can the township maintain an action for money had and received by Moots, when his proof will show that the identical money was in its possession, and that he did not receive it?
But it is contended that if interested, he should have been allowed to testify to prevent a failure of justice, and Greonleaf and Starkie are cited in support of this position. They fail to do it. We have already seen that the law contemplates written evidence; that no necessity exists, in cases of this description, for a resort to parol proof. The receipt in question should have specified the *440 amount received in money, and the orders, and other projjerty, should also have been specified. If money was receipted for when only a canceled order was handed over, it was an act, not of necessity, but of carelessness, or folly, and one which furnishes not the least ground for a departure from general principles.
The next inquiry is, had the town trustees any right to release the demand? It is claimed that they had the right, as an incident to the authority to sue; and the act of 1831, Swan’s Stat. 952, 953, is cited to show the authority. Section 1 confers upon the township the capacity of suing and being sued. Section 15 authorizes the trustees to settle the accounts of township treasurers. Section 19 makes it the duty of the treasurer to execute a bond to the trustees, and their successors in office, “conditioned for the faithful receiving, and paying over, all moneys which may come into his hands, for the use of the township,” to be deposited with the clerk, and, when forfeited, by him sued, on the order of the trustees. This law has no reference to the school funds. It relates to a different subject, and can not be made to conflict with the provisions of the act of March 7, 1838, Swan’s Stat. 824, the ' *first eleven sections of which provide for the creation of the fund, and its uses. Section 12 constitutes the treasurer of the township treasurer of the school funds of the township, and re■quires him, “ on his election, to give bond with sufficient security, payable to the State of Ohio, to be approved of by the trustees, for the faithful disbursement of all such funds as shall, from time to time, come into his hands, and on the forfeiture of said bond, it chalí be the duty of the township clerk to prosecute and collect \he same for the use of the township.” Section 14 proves for the mode of disbursement, and the fifteenth for annual settlements with the county superintendent, and with the successor in office. 'Thus it will be seen that the two statutes do not conflict. Each (Operates on an appropriate subject. The township fund for civil purposes, and the township fund for the support of schools. Each fund is secured by a separate bond, and, in many respects, controlled and managed by a distinct class of officers. The trustees of the township have no right to control the school fund, no right •to interfere, or meddle, with the treasurer’s bond given to secure it, except to approve of the sureties. The right to sue it, is vested in the township clerk, and with this right the trustees can not in *441 terfere. A discharge by them of the bond, or of any demand which it was intended to secure, is a perfect nullity, because the power has not been granted to them expressly, and can not be taken by implication, as incidental to any expressly granted power. Application refused.